UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LORI ANN ACQUISTO,                                    **REPORT AND**
                                                      **RECOMMENDATION**

                     Plaintiff,                     11-CV-00803(A)(M)

v.

MANITOWOC FSG OPERATIONS, LLC,
fka MANITOWOC FSG OPERATIONS, INC.
and MANITOWOC ICE, INC.,

                     Defendant.
_____

        Pursuant to 28 U.S.C. §636(b)(1), this action has been referred to me by District Judge Richard J. Arcara for supervision of pretrial proceedings [6].[1]  Before me are two motions for sanctions by plaintiff: the first motion [24] seeks sanctions pursuant to Fed. R. Civ. P. ("Rule") 11(c) against defendant Manitowoc FSG Operations, LLC ("Manitowoc FSG"), its parent company The Manitowoc Company, Inc. ("Manitowoc"), and/or their attorneys, for filing an allegedly frivolous motion to dismiss; and the second motion [25] seeks to require Manitowoc FSG to show cause, pursuant to §2.3(B) of this court's ADR Plan, why it should not be sanctioned for failure to participate in the ADR process in good faith.

        For the following reasons, I conclude that opposing papers are not necessary, and I recommend that both motions be denied.[2]

---

[1]    Bracketed references are to CM/ECF docket entries.

[2]    Because it is unclear in this Circuit whether sanctions motions are considered dispositive or non-dispositive (*see* Wik v. City of Rochester, 2010 WL 3062813, *1 (W.D.N.Y. 2010) (Siragusa, J.), Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010)), I will err on the side of caution and proceed by way of a Report and Recommendation rather than a Decision and Order.

**BACKGROUND**

Plaintiff commenced this action against Manitowoc on September 22, 2011, seeking damages for personal injuries sustained when she slipped in a puddle of water which she alleged was caused by a defective ice machine which it designed, manufactured and/or sold. Complaint [1]. In its Answer [5], Manitowoc denied that it designed, manufactured or sold the machine.

On January 26, 2012 I issued an order scheduling a Rule 16 conference for February 22, 2012 [7]. On February 21, 2012, plaintiff's counsel e-mailed my secretary, Deborah Zamito (copying Manitowoc's counsel) [24-2], suggesting that Manitowoc should be prepared to explain at the following day's conference why it would not stipulate to substitute Manitowoc FSG for Manitowoc as the proper defendant. The e-mail further stated that plaintiff would seek sanctions "[i]f Manitowoc forces us to engage in unnecessary paper and electronic discovery and depositions, and motion practice" in order to secure the substitution of parties.

At the chambers conference on February 22, 2012 the parties were unable to reach agreement to allow substitution of Manitowoc FSG for Manitowoc as the proper defendant. However, they did agree as to deadlines for filing of Manitowoc's motion for summary judgment and for plaintiff's motion to amend the complaint, which I confirmed in a Text Order that same day [8]. That Text Order also scheduled a further status conference for April 12, 2012 to discuss the motions before setting a briefing schedule.

On March 12, 2012, Manitowoc filed its motion for summary judgment [9], arguing that "Acquisto has sued the wrong defendant. [Manitowoc] does not design or manufacture any products . . . . The products allleged to have caused Acquisto's injuries were

designed, manufactured, and sold by Manitowoc FSG". Russ Declaration [10], ¶¶7-8. On April 3, 2012, plaintiff cross-moved for leave to amend her complaint by substituting Manitowoc FSG for Manitowoc as the defendant [13], arguing that in view of the close relationship between the two companies, Manitowoc FSG was on notice of plaintiff's claim and amendment should be allowed.

At the chambers conference on April 12, 2012 [14], Manitowoc's counsel stated that he would talk to his client about withdrawing the motion for summary judgment, and a further conference was set for April 19, 2012 [15]. At the April 19 conference, counsel agreed that plaintiff's motion to amend the complaint would be granted, and that Manitowoc's motion for summary judgment would be withdrawn. This agreement was confirmed in my Text Order of the same date [17]. There was no mention at that time of plaintiff's intention to subsequently move for sanctions based on Manitowoc's having moved for summary judgment.

Thereafter, plaintiff filed her Amended Complaint [19], which was answered by Manitowoc FSG [20]. The parties then participated in two mediation sessions before Michael Menard, Esq. on June 11 and July 10, 2012 [22, 23], in accordance with this court's ADR program. Following the second session, the mediator certified that the case had not settled and that the mediation was complete [23].

On July 23, 2012 plaintiff filed the pending motions for sanctions, arguing that Manitowoc violated Rule 11(b) "when it filed a frivolous motion for summary judgment based on a patently meritless affirmative defense" [24], and that Manitowoc FSG should be required to show cause "why sanctions should not be imposed for its failure to participate in the ADR process in good faith" [25].

## ANALYSIS

A.      **Rule 11 Sanctions**

Rule 11(c)(2) requires that a motion for sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets".

The 21-day "'safe harbor' period begins to run only upon service of *the motion*." Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) (emphasis in original). Because "[t]he safe-harbor provision is a strict procedural requirement" (id.), "[s]anctions imposed without compliance are subject to reversal". 2 Moore's Federal Practice (3d ed.), §11.22.

Plaintiff's counsel argues that his February 21, 2012 e-mail constitutes a "motion" for purposes of Rule 11(c)(2)'s "safe harbor" provisions. Behr Declaration [24-1], ¶20 (citing Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003)). However, Nisenbaum's holding that a letter can suffice as a motion for purposes of Rule 11(c)(2) is contrary to the law of this Circuit. "An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21 - day safe harbor period." Star Mark, 682 F.3d at 175. See also Gal v. Viacom International, Inc., 403 F. Supp.2d 294, 309 (S.D.N.Y. 2005) ("the plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock - the rule says nothing about the use of letters").

Moreover, Rule 11(c)(2) requires that the motion "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets". The February 21 e-mail was not "served" under any of the methods specified by Rule 5 and, contrary to the prohibition in Rule 11(c)(2), it was presented to the court (being addressed to my secretary) on the same day that it was written - before Manitowoc had an opportunity to withdraw the motion which had not yet even been filed.

Given the fact that plaintiff's Rule 11 motion was not filed until over three months after the Manitowoc's summary judgment motion had been withdrawn, I can only assume that it was motivated by the "no-pay" position which Manitowoc FSG adopted in the mediation. While plaintiff's frustration with that position is perhaps understandable, it does not justify the filing of a clearly unfounded sanctions motion. In fact, "where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." <u>Industrial Technology Ventures LP v. Pleasant T. Rowland Revocable Trust</u>, 2012 WL 777313, *7 (W.D.N.Y. 2012) (Siragusa, J.).

Rule 11 (c)(2) provides that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion". As I have not put defendant to the expense of opposing this frivolous motion, I will not recommend that a sanction be imposed. However, I hope that plaintiff's attorney, having "dodged a bullet", will use this occasion to reflect on his own obligations under Rule 11.

**B.**     **ADR Sanctions**

In seeking sanctions for Manitowoc FSG's alleged failure to mediate in good faith, plaintiff faults its failure to make any settlement offer in response to what she believes to be a strong case of liability: "In my view there could hardly be a clearer case of a dangerous, defectively designed product, than Manitowoc's Q Series ice dispenser . . . . Manitowoc's atavistic and unenlightened corporate policy of 'we never pay' imposes unnecessary burdens on the resources of this court, and grossly violates both letter and spirit of this court's ADR plan". Behr Declaration [25-1], ¶¶20, 29.

What "imposes unnecessary burdens on the resources of this court" is the filing of motions having absolutely no chance of success. It is beyond dispute that although courts may require parties to participate in mediation, they lack the power to sanction a party for refusing to make a settlement offer.  See Francis v. Women's Obstetrics and Gynecology Group, P.C., 144 F.R.D. 646, 647 (W.D.N.Y. 1992) (Larimer, J.) ("It is, of course, well-established that a district court cannot coerce parties to settle"); In re A.T. Reynolds & Sons, Inc., 452 B.R. 374, 382 (S.D.N.Y. 2011) ("[A]lthough a court may require parties to appear for a settlement conference . . . it may not coerce a party into making an offer to settle . . . . And a party is within its rights to adopt a 'no-pay' position"); Bilodeau v. Vlack, 2010 WL 2232484, *6 (D.Conn.), adopted, 2010 WL 2232480 (D.Conn. 2010) ("The Court cannot - and would not - sanction a party for refusing to settle").

**CONCLUSION**

For these reasons, I recommend that plaintiff's motions [24, 25] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 20, 2012 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  August 1, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
