UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| LORI ANN ACQUISTO,<br><br>                                  Plaintiff,<br><br>v.<br><br>MANITOWOC FSG OPERATIONS, LLC<br>f/k/a MANITOWOC FSG OPERATIONS, INC.,<br>and MANITOWOC ICE, INC.,<br><br>                                  Defendant. | **REPORT, RECOMMENDATION<br>AND ORDER**<br><br>11-CV-00803(A)(M) |

_____

This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [6].[1]  Before me is the motion of defendant Manitowoc FSG Operations, LLC ("Manitowoc") for summary judgment [62], and its motion to strike the Declaration of plaintiff's expert witness, Donald Johnson, Jr. [76].  Oral argument was held on May 16, 2014 [82].

For the following reasons, I recommend that Manitowoc's motion for summary judgment be granted. In light of that recommendation, its motion to strike is denied, without prejudice to renewal in the event that my recommendation is not adopted.

## BACKGROUND

Plaintiff seeks damages for personal injuries allegedly sustained on September 26, 2008 when she slipped on an accumulation of water in the cafeteria at the Bank of America in Getzville, New York.  Amended Complaint [19], ¶¶3, 4.  She alleges that the water leaked from

---

[1]       Bracketed references to CM/ECF docket entries.

Manitowoc's ice dispensing machine, and that the machine was defectively designed because it was foreseeable that the drain of its ice catch basin would become plugged, causing water to overflow onto the floor.  Complaint [1].

In a report dated July 13, 2013 [62-15], Mr. Johnson first set forth 13 paragraphs of "documents and data" which he had "reviewed and considered" (id., pp. 1-3, ¶¶1-13), followed by eight paragraphs of "opinions to which I will testify" (id., pp. 3-4, ¶¶1-8).  Each of those opinions related to alternative designs for the ice catch basin, and none of those opinions stated that the basin was defective.  When asked at his deposition whether he had "any other opinions other than those expressed in [his] report", he responded "[n]ot at this time, no". [76-3], p. 53.

In moving for summary judgment, Manitowoc argues that Mr. Johnson did not characterize the ice machine as defective in his report or deposition (Manitowoc's Memorandum of Law [62-25], p. 3), that the record evidence shows that the ice dispenser was not clogged on the day of the accident (id., p. 4), that there is no evidence that the ice machine failed to perform as intended (id., p. 11), and that plaintiff cannot rule out the possibility that the water on which she slipped came from a source other than the ice machine (id., p. 13).

Responding to the motion, plaintiff submits Mr. Johnson's Declaration [69-7] in which he states that:

- "Although my report did not use the word 'defective,' it is made very clear that, in my expert opinion, the ice catch basin . . . is very poorly and dangerously designed, which makes its design 'defective,' as I understand that word".  Id., ¶4.

-2-

- "I can affirm that any plumbing fixture that, like the defendant's machine, has a designed-in tendency to overflow and leak water onto floors where people walk is dangerously defective in its design." Id., ¶10.

- "I do indeed regard the design of the defendant's ice catch basin as dangerously defective, in that it was readily prone to becoming clogged, as proven by the record in this case, including the deposition testimony of defendant's vendor's service technician Jon Brzuszkiewicz, who testified that these machine's catch basin drains are prone to clogging and causing overflows in approximately 50% of the installations of defendant's ice dispensers". Id., ¶22.

Thereafter, Manitowoc moved to strike the Johnson Declaration, arguing *inter alia* that it exceeded the scope of his report and deposition testimony by characterizing the machine as a "plumbing fixture" which was "defective". McCarthy Affidavit [76], ¶¶11, 12.

## ANALYSIS

**A.     The Standard for Summary Judgment**

"A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 111 (2d Cir.2001).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.      **The Standard for a Defective Design Claim**

According to plaintiff, the "leading case on what is required to prove a design defect" is Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102 (1983). Plaintiff's Memorandum of Law [72], p. 7. Under Voss, "the proper standard to be applied should be whether the product as designed was 'not reasonably safe' - that is, whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." Id. at 108.

In order to meet that standard, plaintiff must "present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." Id. The plaintiff must also prove "that the product in question was defective or dangerous at a time when the defendant had possession or control of it", 86 N.Y. Jur.2d, Products Liability §23, and "that the defectively designed product caused his injury". Voss, 59 N.Y.2d at 109.

C.      **Can Plaintiff Establish a Prima Facie Case?**

    1.      **Is There Sufficient Evidence That Manitowoc's Machine Was the Source of the Water?**

Although Manitowoc argues that there are other potential sources of the water on which plaintiff slipped (Manitowoc's Memorandum of Law [62-25], p. 13), plaintiff points to the testimony of a cleaning employee, Mary Carroll, who stated that when she was called to clean up

the water after plaintiff's accident, she observed that it was "coming from the ice machine . . . . It was dripping from underneath it". Carroll deposition [62-12], p. 17.

That testimony is sufficient to raise a triable issue of fact as to the source of the water. "Plaintiffs need not positively exclude every other possible cause of the accident. Rather, the proof must render those other causes sufficiently remote or technical to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence." Gayle v. City of New York, 98 N.Y.2d 936, 937 (1998).

    **2.**    **Is There Sufficient Evidence That Manitowoc's Machine Posed a Substantial Likelihood of Harm at the Time it Left Manitowoc's Control?**

While plaintiff's expert discusses alternative designs which might have prevented the accident, plaintiff must first "demonstrate that the subject product was not reasonably safe for its intended use, before the issue of a feasible alternative design is even addressed". Rypkema v. Time Mfg. Co., 263 F.Supp.2d 687, 693 (S.D.N.Y. 2003). As previously discussed, in order to prove that Manitowoc's ice machine was not reasonably safe for its intended use, plaintiff must demonstrate that, as designed, the machine posed "a substantial likelihood of harm" (Voss, 59 N.Y.2d at 108) at the time the machine left Manitowoc's control. 86 N.Y. Jur.2d, Products Liability §23.

The phrase "substantial likelihood" connotes more than "mere likelihood". Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC, 725 F.Supp.2d 389, 393 (S.D.N.Y. 2010). It means "a real and significant *probability* rather than a mere possibility". In re Termination of Parental Rights to Daniel R.S., 706 N.W.2d 269, 275 (Wis. 2005) (emphasis added). *See also* United States v. Thorn, 317 F.3d 107, 117 (2d Cir.), cert. denied, 538 U.S. 1064

(2003) ("substantial likelihood means considerably more likely").  Plaintiff's expert agreed that if used as intended, the machine would not overflow:

> Q. "If just water or melted ice flowed through a drain, it wouldn't become clogged, would it?
>
> A. I wouldn't think so, no." [62-14], p. 102.

Therefore, in order to avoid summary judgment, plaintiff must offer proof that the potential for clogging of the drain created a "substantial likelihood" - not merely a possibility - of harm.  In an attempt to do so, she argues that the "defective design causes water on the floor in approximately 50% of the locations where similar machines are located - those locations where there are 'slob employees,' people who are not architects or lawyers, who dispose of food items etc. in the catch basins - according to . . . Jon Brszuskiewicz".  Plaintiff's Memorandum of Law [72], pp. 12-13.[2]  "[I]ts machine chronically leaks water onto floors in many of its installations, a condition that obviously presents a 'substantial likelihood of harm".  Plaintiff's Memorandum of Law [78], p. 5.

However, a motion for summary judgment "cannot be defeated by factual assertions in a brief by the party opposing it".  Taylor v. Small, 350 F.3d 1286, 1295 (D.C. Cir. 2003); 10A Wright, Miller, Kane, Federal Practice & Procedure (Civil) §2723 (3d ed.) ("documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues").  Instead, "[w]hen the moving party has carried its

---

[2] Apparently there is no such thing as a slob architect or lawyer.

burden . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original).

   The record simply does not support the contentions asserted by plaintiff in her memoranda. Mr. Brzuskiewicz (the service technician) did *not* testify that overflows occur in approximately 50% of the installations. What he stated is that "probably half would go to places where there's more instance of, you know, slob employees" ([69-1], p. 82), while noting that many of these so-called "slobs" did not dispose of items in the catch basins: "I mean [named company], there's a thousand people that work there. And the dispensers have been there for . . . . [e]ight years, we never got one service call . . . . I mean they have a thousand people there. And they're not very like super intelligent people, but they have enough common sense to put their garbage in a garbage can instead of dumping it into a drain." Id.; [62-7], p. 83.[3]

   Plaintiff also points to the "problem checklist" of Manitowoc's owner's manual ([69-7], p. 16 of 22), which states that if there is water on floor, the drain may be obstructed and should be cleared. She argues that this demonstrates Manitowoc's knowledge "that its ice catch basin could become clogged by 'garbage' being dropped into it". Plaintiff's Memorandum of Law [72], pp. 4-5. However, the checklist does not state that the source of the obstruction would be garbage, nor does it say anything about the frequency of this occurrence.

   As previously noted, in opposition to Manitowoc's motion, plaintiff's expert opines that Manitowoc's machine "is very poorly and dangerously designed, which makes its

---

  [3] Although Mr. Brzuskiewicz mentioned a specific company in his testimony, I have not identified it in this opinion, so as not to needlessly embarrass either the company or its (in his words) "not very like super intelligent" employees.

design 'defective,' as I understand that word". Johnson Declaration [69-7], ¶4. While I am inclined to reject that opinion as untimely,[4] even if considered it does not shed light on the issue before me, namely whether the machine posed "a substantial likelihood of harm" (Voss, 59 N.Y.2d at 108), *i.e.*, "a real and significant probability rather than a mere possibility". In re Termination of Parental Rights, 706 N.W.2d at 275. While the record suggests the *possibility* of harm from improper use of the machine, it does not show that harm was substantially likely. In fact, at oral argument plaintiff's attorney admitted that he was unaware of any other accidents as a result of water overflow from this machine. [82], p. 23.

Since plaintiff has failed to show that there is a genuine issue of material fact as to whether Manitowoc's machine posed "a substantial likelihood of harm", she cannot avoid summary judgment.

## CONCLUSION

For these reasons, I recommend that Manitowoc's motion for summary judgment [62] be granted. In light of that recommendation, its motion to strike [76] is denied, without prejudice to renewal in the event that my recommendation is not adopted.

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by July 14, 2014 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any

---

[4] *See* Hess v. Ameristep, 2008 WL 4936726, *4 (C.D.Ill. 2008) ("Hess may not present Ezra's opinions that are not contained in the Report or revealed in his January 18, 2008, deposition, as evidence to oppose the Defendants' motions for summary judgment").

requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 25, 2014

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge