UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

LORI ANN ACQUISTO,

                       Plaintiff,

            v.                                  11-CV-803(LJV)(JJM)

THE MANITOWOC COMPANY, INC.,

                       Defendant.

─────────────────────────────────

## MEMORANDUM AND ORDER

       The plaintiff commenced this action on September 22, 2011, asserting claims for

negligent product design and strict products liability.[1]  *See* Docket Items 1 & 19

(Amended Complaint).  On December 30, 2013, the defendant moved for summary

judgment.  Docket Item 62.  After the plaintiff submitted her response (Docket Items 69

& 72), the defendant moved to strike the declaration of the plaintiff's expert witness.

Docket Item 76.  United States Magistrate Judge Jeremiah J. McCarthy thereafter

issued a Report and Recommendation ("R&R"), dated June 25, 2014, in which he

recommended that the defendant's motion for summary judgment be granted.  Docket

Item 83.  Judge McCarthy also denied the defendant's motion to strike "without

prejudice to renewal in the event that [the] recommendation [on summary judgment] is

not adopted."  *Id.* at 1.  Pending before this Court are the plaintiff's objections to the

R&R.

───────────────

[1] The plaintiff also included "punitive damages" as a separately labeled claim for relief,
but a "demand or request for punitive damages is parasitic and possesses no viability
absent its attachment to a substantive cause of action."  *Rocanova v. Equitable Life
Assur. Soc. of U.S.*, 83 N.Y.2d 603, 616, 634 N.E.2d 940, 945 (1994).

This case was reassigned from United States District Judge Richard J. Arcara to the undersigned on March 7, 2016.  Docket Item 92.  On March 23, 2016, this Court heard oral argument on the plaintiff's objections.  Docket Item 95.  Both sides were permitted to submit additional briefing, and they did so on April 13, 2016.  *See* Docket Items 97 & 98.

For the reasons set forth below and in the R&R, the defendant's motion for summary judgment (Docket Item 62) is GRANTED.

## STANDARD OF REVIEW

With respect to dispositive matters such as the defendant's motion for summary judgment, this Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

To the extent that the plaintiff objects to non-dispositive matters, this Court "may reconsider" the magistrate judge's decision only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a).

## SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant—i.e., the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material

fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

The plaintiff objected to (1) Judge McCarthy's recommendation that summary judgment be granted to the defendant and (2) the denial of the defendant's motion to strike to the extent that it was without prejudice. The plaintiff also requested that this Court grant her summary judgment, even though she did not move for such relief, pursuant to Fed. R. Civ. P. 56(f) ("Judgment Independent of the Motion").

## I.     THE PLAINTIFF'S THEORY

The plaintiff claims that she suffered injuries on September 26, 2008, when she slipped and fell in her workplace cafeteria.  *See* Docket Item 19 (Amended Complaint) at 2 (¶¶ 3-4).  She alleges that her "accident resulted from water leaking onto the floor from a 'Q Model' ice making and dispensing machine combination."  *Id.* (¶ 5).

The defendant manufactured and sold the ice dispenser—specifically, a Model QFA-291—in May 2000.  Docket Item 69[2] at 3 (¶ 1).  At the time of the incident, non-party Reite-Way Refrigeration ("Reite-Way") owned the ice dispenser and was leasing it to the plaintiff's employer, non-party Bank of America.  *See id.* at 4-5 (¶ 4).  Reite-Way had installed the ice dispenser in the cafeteria at Bank of America's offices in Getzville, New York, on April 11, 2008.  *See id.* (¶¶ 4, 6).  Under the lease, Bank of America was responsible for maintaining the ice dispenser (although the property owner, non-party Uniland Property Management Company, also may have cleaned the machine).  *See id.* at 4-5 (¶ 4), 17-18 (response to ¶ 25).

The ice dispenser "had a drain pan that was designed to catch any excess ice that might fall," allowing it to "melt and then exit the machine through [a] vinyl half inch diameter drain line."  *Id.* at 9 (¶ 13).  It is undisputed that "[t]he ice dispenser drain was designed for liquid only" and "was not designed to be a garbage disposal."  *Id.* at 8 (¶ 12).  So when employees "threw garbage into the drain pan," Reite-Way was repeatedly called to service or clean the machine.  *Id.* at 6-9 (¶¶ 10-15).

---

[2] Docket Item 69 is the "Plaintiff's Response to Defendant's Statement of Facts and in Support of Plaintiff's Request Under F.R. Civ. P. 56(f)(1)."  It recites the defendant's statement of undisputed facts and includes responses for each paragraph that "the plaintiff disputes, wholly or partly."  Docket Item 69 at 2.  The facts set forth herein either were undisputed or were the subject of clearly meritless objections.

As the plaintiff describes it, employees "use the ice catch basin as a convenient disposal for food items and coffee stirrers, etc.," which causes "the defendant's unprotected ice catch basin drain [to become] plugged and causes water to overflow onto floors." *Id.* at 7 (response to ¶ 10). Thus, it is the plaintiff's theory that the ice dispenser was defectively designed because "workers' use of defendant's ice catch basin as a 'garbage disposal' was foreseeable . . . and defendant is liable for failing to safely design its product in light of that foreseeable misuse." Docket Item 72 at 8. The plaintiff does not allege any manufacturing defect or failure to warn.[3]

## II.   STRICT PRODUCTS LIABILITY

Because the basis for jurisdiction in this Court is diversity of citizenship under 28 U.S.C. § 1332(a), New York law governs the plaintiff's claims. *See Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994) ("A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In New York, "to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective

---

[3] "In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (internal citations omitted). As discussed in more detail below, design defect cases also may be premised on arguably unintended yet reasonably foreseeable uses of an unreasonably dangerous product. *See Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 158, 305 N.E.2d 769, 773 (1973) (motorcycle manufacturer may be liable for "unreasonably dangerous" design defects that do not cause collisions but instead only "enhance or aggravate injuries").

design was a substantial factor in causing plaintiff's injury." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107, 450 N.E.2d 204, 208 (1983).

The parties' summary judgment submissions disagreed starkly about whether there is any evidence that the ice dispenser's drain was clogged on the day in question or that the plaintiff slipped on water from the ice dispenser—and therefore about whether the allegedly defective design was a substantial factor in causing the plaintiff's injury. But the R&R did not focus on those issues. As noted in the R&R, *see* Docket Item 83 at 5, a cleaning employee, Mary Carroll, stated that water was "coming from the ice machine" when she was called to clean up after the plaintiff's accident. Docket Item 62-12 at 11. Ms. Carroll also said that the water was dripping from the machine because "the drain that holds the ice was plugged"—an occurrence she claims to have observed "numerous times before." *Id.* For that reason, there is a question of fact about whether a clogged ice machine caused the plaintiff's injury, and the R&R therefore focused on whether the ice dispenser was "not reasonably safe." Given the nature of the plaintiff's objections, this Court will follow suit.

The design of a product is "not reasonably safe" if—assuming the alleged "defect [was] known at the time of manufacture"—"a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Voss*, 59 N.Y.2d at 108, 450 N.E.2d at 208. A plaintiff making such a claim "is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.* The "defendant manufacturer, on the other hand, may present evidence in opposition seeking to show that the product is a

6

safe product—that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost." *Id.*

In *Voss*, the New York Court of Appeals identified seven non-exclusive factors to consider when "balancing the risks inherent in the product, as designed, against its utility and cost." *Id.* at 109, 450 N.E.2d at 208.  Those factors include:  "(1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product—that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design." *Id.* at 109, 450 N.E.2d at 208-09.

In her objections, the plaintiff argues that the R&R misapplied New York law by focusing on whether she made a showing of "substantial likelihood of harm" without considering those risk-utility factors.  *See, e.g.*, Docket Item 85 at 6.  She also argues that "the defendant presented no evidence whatsoever, expert or otherwise, to defend the safety of its machine . . . ."  Docket Item 97 at 1-2.  According to the plaintiff, the burden therefore "never shifted to [her] to present such evidence . . . ."  *Id.* at 2.

The "issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally one 'for the jury to decide' . . . ."  *Yun Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 33, 950 N.E.2d 113, 116 (2011) (quoting

*Voss*, 59 N.Y.2d at 108, 450 N.E.2d at 208).  But—at least in federal court—a "defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324).

Here, the defendant's submissions pointed out that there is absolutely no evidence showing that the ice dispenser's drain would clog if used as intended.  *See generally Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 481, 403 N.E.2d 440, 444 (1980) ("Where the product is marketed in a condition safe for the purposes for which it is intended or could reasonably be intended, the manufacturer has satisfied its duty.").  The defendant's submissions also pointed out that there is no evidence showing that the design deviated from any identified industry or safety standards.[4]  And they vigorously argued that even with the plaintiff's disclosed expert evidence, the plaintiff still would not be able to prove that the ice dispenser was defective.  *See, e.g.*, Docket Item 62-25 at 3-4.[5]

---

[4] According to the defendant, the ice dispenser "was designed and manufactured to comply with all Foodservice industry requirements and National consensus standards for this type of equipment."  Docket Item 74 at 9 (¶ 18).  At the same time, the defendant claims that none of those standards are "relevant" to the ice dispenser's drain basin. *See id.*  The plaintiff apparently agrees that the ice dispenser met those standards and/or that those standards did not apply.  *See* Docket Item 69 at 4 (response to ¶ 2). The plaintiff also did not submit any evidence showing that the defendant violated any specific industry standards.

[5] In its motion to strike, the defendant also argued that permitting the plaintiff to rely on a "belated" declaration from her expert would result in prejudice to the defendant.  Docket Item 76-4 at 2, 4.  In other words, the defendant claimed that the plaintiff "filed her expert's Declaration in an attempt to cure the deficiencies" in her expert's report "seven

For those reasons, notwithstanding the plaintiff's objections, this Court finds that the defendant satisfied its initial burden.  *See Celotex*, *supra*; *see also Chow*, 17 N.Y.3d at 36, 950 N.E.2d at 118 (Smith, J., concurring) (noting that while defendant failed to meet its initial burden under New York summary judgment law because it failed to address the risk-utility balance of its "inherently dangerous" product, the result "would probably [be] different" in federal court under *Celotex*).  The plaintiff therefore was obligated to raise a genuine dispute of material fact in response to the defendant's motion.

The plaintiff attempted to do that by arguing that "use of defendant's ice catch basin as a 'garbage disposal' was foreseeable . . . and defendant is liable for failing to safely design its product in light of that foreseeable misuse."  Although issues of foreseeable misuse often are addressed in terms of a failure to warn,[6] New York law requires manufacturers "to exercise that degree of care in [their] plan[s] or design[s] so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended . . . , *as well as an unintended yet reasonably foreseeable use*."  *Micallef v. Miehle Co., Div. of Miehle-Goss Dexter*, 39 N.Y.2d 376, 385-86, 348 N.E.2d 571, 577 (1976) (emphasis added); *see Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 54, 11 N.E.3d 693, 701

---

(7) months after the Court-ordered date for expert disclosure and only after Manitowoc filed for summary judgment and raised the deficiencies."  *Id.* at 3-4.  This Court does not reach that issue because this decision makes the issue moot.

[6] *See generally Amatulli by Amatulli v. Delhi Const. Corp.*, 77 N.Y.2d 525, 537, 571 N.E.2d 645, 651 (1991) (Titone, J., dissenting in part) ("While the focus of a design-defect claim . . . is the product's fitness for intended uses, the focus of a failure to warn claim such as that asserted here is whether there has been a breach of the manufacturer's duty to warn consumers against using the product for unintended but foreseeable purposes.") (internal citation omitted).

(2014).  "What constitutes reasonable care will, of course, vary with the surrounding circumstances and will involve a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm."  *Micallef*, 39 N.Y.2d at 386, 348 N.E.2d at 577-78 (internal quotation marks omitted).

One example of how a plaintiff bringing such a claim can defeat summary judgment is illustrated by *Lugo by Lopez v. LJN Toys, Ltd.*, 75 N.Y.2d 850, 552 N.E.2d 162 (1990).  In that case, the infant plaintiff sustained injuries after being struck in the eye by a detachable part—a "shield" or "blade" in the shape of an eight-pointed star— from a "Voltron-Defender of the Universe" doll.  *Id.* at 851-52, 552 N.E.2d at 162-63.  In response to the defendant's summary judgment motion, the plaintiff "submitted expert evidence that, based upon customs and standards in the toy safety community, the part was defective" because it was detachable and because of extensive television exposure in which Voltron—"a well-known television cartoon character"[7]—"overcame enemies by hurling his shield at them."  *Id.*  As the New York Court of Appeals concluded, that "was sufficient . . . to establish questions for the jury of whether the product was defective and reasonably safe for its intended use *or* a reasonably foreseeable unintended use." *Id.* (emphasis added).

In this case, the plaintiff submitted expert evidence in the form of a report and declaration from Donald Johnson, a "master plumber" with 30 or 40 years of

---

[7] Actually, Voltron was the name of the giant humanoid robot, or mecha, piloted by the show's characters.

experience[8] in the plumbing field.  In his report, the plaintiff's expert opined that the defendant could have manufactured the ice dispenser with (1) the drain strainer used on its "S Series ice dispensers," (2) a more effective "'tall' drain strainer," or (3) "a secondary or overflow drain."  Docket Item 69-7 at 10-11.  The plaintiff's expert said that those options were inexpensive, were known at the time of manufacture, and would have made the ice dispenser's drain less likely to become clogged or would have prevented the accident.  *Id.*  In his declaration (i.e., the subject of the defendant's motion to strike), the plaintiff's expert added that although he had not previously used the word "defective," the ice dispenser was "very poorly and dangerously designed, which makes its design 'defective,' as [he] understand[s] that word."  *Id.* at 1-2 (¶ 4). And he concluded "that any plumbing fixture that, like the defendant's machine, has a designed-in tendency to overflow and leak water onto floors where people walk is dangerously defective in its design."  *Id.* at 3 (¶ 10).

In addition to her expert evidence, the plaintiff relied on the inherent risk presented by wet floors and the likelihood that people would use the dispensers as trash bins, causing water to overflow.  In this regard, the plaintiff cited the testimony of one of the Reite-Way's service technicians, Jon Brzuskiewicz, who stated that "probably half [of Reite Way's ice dispensers] would go to places where there's more instance of, you know, slob employees"—i.e., individuals who may use the drain basin as a trash receptacle.  Docket Item 69-1 at 82.

But under New York law, that evidence falls short.

---

[8] *Compare* Docket Item 69-7 at 2 (¶ 7) *with id.* at 8.

First, there is no evidence in the record that *anyone* other than the plaintiff *ever* has been injured due to the ice dispenser drain's clogging.  Nor is there any specific evidence about how often the clogs—and any resulting overflows—occur.  The plaintiff attempts to infer from Brzuskiewicz's testimony that overflows must occur in 50% of similar ice dispenser installations.  But as Judge McCarthy explained in the R&R, *see* Docket Item 83 at 7, Brzuskiewicz did not say that.  In fact, immediately after stating that "probably half" of Reite-Way's ice dispensers were installed at places with "slob employees," Brzuskiewicz said that the ice dispensers did not necessarily have clogging issues even at those locations.  In Brzuskiewicz's words: two ice dispensers have for years been at a location with "a thousand people that work there" who are "not very like super intelligent people" without "one service call."  Docket Item 69-1 at 82-83. Apparently, the employer simply "put a garbage can in front [of the dispenser] so the employees would dump their garbage in the garbage can instead of dumping it in the dispenser."  *Id.*

The plaintiff's expert adds nothing to that testimony.  In fact, his opinions about the dangerousness of the ice dispenser rely on secondhand accounts of the depositions in this case.  *See, e.g.*, Docket Item 69-7 at 9 ("I understand from discussions with plaintiff's counsel that a cleaner has testified that the subject ice dispenser had been observed to leak water repeatedly in the past . . . .").  He did not actually review the deposition transcripts.  *See* Docket Item 62-14 at 5-6.  He did not cite any studies,

statistics, or other similar incidents.  He did not examine the ice dispenser[9] or conduct any testing.  And he has no experience designing ice dispensers or similar products.[10]

The plaintiff's evidence therefore boils down to common knowledge concerning the risks of wet floors and her expert's opinions on better ways to design an ice dispenser.  New York courts have found similar evidence insufficient to establish that a product's design is not reasonably safe.

In *Delgado v. Markwort Sporting Goods Co.*, for example, the plaintiff's expert (a Ph.D. and associate director of recreational sports at Ohio State University) opined that "flag belts" (i.e., belts with detachable flags for use in flag football) using D-shaped rings as fasteners were not reasonably safe.  39 Misc. 3d 147(A), 972 N.Y.S.2d 143 (App. Term 2d Dep't 2013).  According to the expert, the design presented a risk of finger entrapment that could be eliminated by using a ring-less "quick-release" design.  *Id.* Although the expert's proposal might make some sense as a safer design, the New York court found that the plaintiff nevertheless had "failed to submit sufficient evidence to prove, prima facie, that the D-ring flag belt posed a substantial likelihood of harm." *Id.* (citing *Voss*, 59 N.Y.2d at 108, 450 N.E.2d at 208).  As in the case at bar, the *Delgado* expert had a wealth of practical experience in a related field and some seemingly commonsense ideas for an improved design.  But because he "had no experience in the design or manufacture of flag belts," had "conducted no testing of the

---

[9] He instead reviewed some technical documents (manual, parts list, etc.) and photographs.

[10] His qualifications are based solely on his years of experience in the plumbing and HVAC industry.  He therefore opines that "[t]he defendant's machine is simply a specialized plumbing fixture:  it is fed water from the building's plumbing system, and it drains unused water, spilled as ice into its catch basin from its ice dispenser, into the building's drainage system."  Docket Item 69-7 at 3 (¶ 8).

13

D-ring flag belt," and had no evidence of any other injuries, *id.*, the *Delgado* expert's experience and common sense were not good enough.

Similarly, in *Cervone v. Tuzzolo*, the plaintiff's expert, a licensed mechanical engineer, opined that a "dinette table was defectively designed because the table legs created a tripping hazard."  291 A.D.2d 426, 427, 738 N.Y.S.2d 60, 61 (2d Dep't 2002). Noting that the expert "had no practical experience or personal knowledge in the design of dining room furniture," the court found that his opinion "was unsupported by foundational facts such as a deviation from industry standards or statistics showing the frequency of injuries caused by such a design."  *Id.* at 427, 738 N.Y.S.2d at 62. "Therefore, it was insufficient to support a finding that the dinette table was not [reasonably safe]."  *Id.*

The plaintiff's expert proof here suffers from the same deficiencies as did the expert proof in those cases.  And while both those cases involved directed verdicts, comparable cases in the summary judgment context support the same conclusion. *See, e.g., Castro v. Delta Int'l Mach. Corp.*, 309 A.D.2d 827, 828, 766 N.Y.S.2d 65, 66 (2d Dep't 2003) ("The opinion of the plaintiff's expert, a licensed professional engineer whose resume was not submitted, was not supported by foundational facts such as actual testing of the drill press, statistics showing frequency of injury resulting from the machine's design, or consumer complaints."); *Martinez v. Roberts Consol. Indus., Inc.*, 299 A.D.2d 399, 399, 749 N.Y.S.2d 279, 280 (2d Dep't 2002) ("the expert's opinion was not supported by any foundational facts such as actual testing of the knife, a deviation from industry standards, statistics showing frequency of injury resulting from the design of the knife, or consumer complaints"); *Geddes v. Crown Equip. Corp.*, 273 A.D.2d 904,

14

904, 709 N.Y.S.2d 770, 771–72 (4th Dep't 2000) ("The qualifications of their expert do

not establish that he has any experience or personal knowledge in the design,

manufacture or use of forklift trucks, nor is the expert's conclusion that the forklift truck

was defective and unsafe because of the presence and size of the rearview mirrors

supported by foundational facts, such as a deviation from industry standards or

statistics showing the frequency of injuries caused by using such a forklift truck."); *see*

*also Amatulli by Amatulli v. Delhi Const. Corp.*, 77 N.Y.2d 525, 533, 571 N.E.2d 645

(1991) (where plaintiff's expert's affidavit contained "only bare conclusory assertions in

respect to industry-wide knowledge . . . , it was insufficient to raise a triable issue of

fact" to defeat summary judgment on failure to warn claim).

   Thus, in the absence of any evidence showing a "substantial likelihood of harm,"

the plaintiff cannot satisfy her burden "of showing 'that the product, as designed, was

not reasonably safe.'"  *Doomes v. Best Transit Corp.*, 17 N.Y.3d 594, 608, 958 N.E.2d

1183, 1191 (2011) (quoting *Voss, supra*).  Her attempts to show that it was feasible to

design the ice dispenser in a safer manner do not change that.  *Delgado*, 39 Misc. 3d

147(A), 972 N.Y.S.2d 143 ("Without any showing that the product in question was

unreasonably dangerous as designed, plaintiff's showing that there were economically

feasible alternate designs available is, essentially, irrelevant.").  Nor do any relevant

risk-utility factors dictate a different result.[11]

---

[11] As previously noted, the plaintiff faults Judge McCarthy for not discussing each of the
risk-utility factors listed in *Voss.*  But when a plaintiff is required to set forth a prima facie
case and is unable to do so, an in-depth discussion of numerous non-exclusive risk-
utility factors tends to be unnecessary (as the New York summary judgment cases cited
above demonstrate).  Moreover, one of the only New York appellate decisions to
include such an in-depth discussion—before finding that the plaintiff failed to submit
"prima facie evidence that the [product] was not reasonably safe"—supports the result

What is more, the plaintiff's expert in this case acknowledged that *any* drain can become clogged if it is abused.  *See* Docket Item 74-7 at 4.  It therefore is surprising, given the ubiquity of plumbing fixtures, HVAC systems, etc., in buildings today, that the plaintiff did not cite a single case in which a New York court analyzed a products liability claim based on a clogged drain or leaking water (caused by misuse or otherwise).  And as the defendant pointed out at oral argument, common fixtures such as kitchen or utility sinks also do not have the overflow drains or strainers that the plaintiff's expert recommended.[12]  All that confirms that the device here is not unreasonably dangerous and that the remedy for the plaintiff's wrong simply cannot be found in New York products liability law.

---

here.  In *Fallon v. Clifford B. Hannay & Son, Inc.*, the court affirmed summary judgment on a design defect claim based on a product that "occasionally" may cause a user to lose balance and fall.  153 A.D.2d 95, 100, 550 N.Y.S.2d 135, 137 (3d Dep't 1989).  The court found that "the magnitude and seriousness of the danger," the plaintiff's awareness of the risk, and the availability of "simple precautions which could have been taken to avoid the disastrous fall [all] militated against a finding that the [product] was unreasonably dangerous."  *Id.* at 99-100, 550 N.Y.S.2d at 137.  Here, too, the magnitude of the danger (approximately the same danger as in *Fallon*), the plaintiff's awareness of the risk (she previously had observed the cafeteria floor to be wet, as public cafeteria floors may sometimes be), and the simple precautions that may have avoided the danger (Brzuskiewicz's testimony suggested that the risks of clogging and overflow can be eliminated by placing a garbage can near the dispenser), militate against a finding that the product was unreasonably dangerous.

[12] The plaintiff attempted to distinguish the ice dispenser from other plumbing fixtures based on the surreptitious manner in which water might drip from a clogged ice dispenser onto the floor.  *See, e.g.*, Docket Item 97 at 3 ("In contrast, when a kitchen or utility sink or toilet overflows, the spillage is immediately visible and obvious, and often quite audible, to anyone in the vicinity; the event itself is a clear and sharp warning that allows people to protect themselves by treading carefully and cautiously.") (emphasis removed).  But even if that assertion is true—something that may not be as self-evident as the plaintiff posits—the plaintiff herself previously had observed the cafeteria floor to be wet, as noted above.

16

Indeed, as New York courts repeatedly have explained, the "legal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers." *Micallef*, 39 N.Y.2d at 387, 348 N.E.2d at 578.  And a "manufacturer's duty . . . does not extend to designing a product that is impossible to abuse."  *Robinson*, 49 N.Y.2d at 480, 403 N.E.2d at 444.  "To hold otherwise casts the manufacturer and supplier in the role of insurers answerable to injured parties in any event . . . ."  *Biss v. Tenneco, Inc.*, 64 A.D.2d 204, 207-08, 409 N.Y.S.2d 874, 877 (4th Dep't 1978).  "[I]t may often be that an injured party, because of the exclusivity of workers' compensation, is barred from commencing an action against the one who exposes him to unreasonable peril by affirmatively rendering a safe product dangerous.  However, that an employee may have no remedy in tort against his employer gives the courts no license to thrust upon a third-party manufacturer a duty to insure that its product will not be abused."  *Robinson*, 49 N.Y.2d at 481, 403 N.E.2d at 444.  Thus, while this Court is sympathetic to the plaintiff in light of the injuries she suffered, holding the defendant liable for those injuries would be the wrong result.

As it happens, this Court was able to find one New York case involving a leaking device (cited by neither side here), which seems to have been decided in a similar way.  In *Leone v. BJ's Wholesale Club, Inc.*, the plaintiff "was injured when she slipped on water leaking from a refrigerated flower display case in a store owned by defendant BJ's."  89 A.D.3d 406, 407, 931 N.Y.S.2d 327, 328 (1st Dep't 2011).  The co-defendant manufacturer moved for summary judgment, submitting evidence that the display case's "condensation evaporation pans" complied with the applicable industry standard.  *Id.*  At

least somewhat like the ice dispenser here, the device in *Leone* "could only handle its own condensate," and misuse of the device—employees apparently pouring water from "flower buckets into it"—caused water to "leak or spill out." *Id.* at 407, 931 N.Y.S.2d at 329. The party opposing summary judgment submitted an expert affidavit opining that the display case was defectively designed. But the court found that "[t]he expert affidavit . . . failed to raise a triable issue of fact, since the expert had not inspected the subject display case; nor did he opine that the design of the display case failed to comply with applicable industry standards." *Id.* at 407, 931 N.Y.S.2d at 328. For similar reasons, the plaintiff failed to raise a genuine dispute of material fact here.

## **CONCLUSION**

In sum, based on New York law and the lack of evidence concerning any substantial likelihood of harm—and after considering the relevant risk-utility factors—this Court agrees with Judge McCarthy that the plaintiff's evidence is insufficient to establish that the ice dispenser's design was not reasonably safe. As Judge McCarthy put it: "While plaintiff's expert discusses alternative designs which might have prevented the accident, plaintiff must first 'demonstrate that the subject product was not reasonably safe . . . , before the issue of a feasible alternative design is even addressed.'" Docket Item 83 at 5 (quoting *Rypkema v. Time Mfg. Co.*, 263 F.Supp.2d 687, 693 (S.D.N.Y. 2003)).

The plaintiff's negligent design claim fails for the same reasons as her strict products liability claim and need not be analyzed separately in this case. *See generally Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) ("Both negligence and strict products liability (under New York Law) require a showing of a product 'defect.'")

(citing *Fritz v. White Consol. Indus., Inc.*, 306 A.D.2d 896, 897, 762 N.Y.S.2d 711, 714

(4th Dep't 2003)); *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258, 662 N.E.2d 730, 735

(1995).

Accordingly, for the reasons set forth above and in the R&R, the defendant's

summary judgment motion (Docket Item 62) is GRANTED, the plaintiff's request for

summary judgment as a non-movant is denied, and the plaintiff's objections to Judge

McCarthy's order on the motion to strike are denied as moot.

IT IS SO ORDERED.

Dated:     March 31, 2017
           Buffalo, New York

                                        *s/Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE